UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

ROBERT HAIGLER,

                    Petitioner,

                                        No. 15-CV-00780(MAT)
          -vs-                          **DECISION AND ORDER**

P. CHAPPIUS, JR.,

                    Respondent.


───────────────────────────────

# I.    Introduction

*Pro se* petitioner Robert Haigler("petitioner" or "Haigler")
seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  After
a disciplinary hearing, petitioner, who was then confined at the
Attica Correctional Facility, was found guilty of violating certain
rules governing inmate behavior, and was initially penalized with
six months confinement in the Special Housing Unit (the "SHU"), six
months loss of visitation, packages, telephone, and commissary
privileges, and three months loss of good time.  Following a
proceeding brought pursuant to Article 78 of New York's Civil
Practice Law and Rules ("Article 78"), the Appellate Division,
Third Department (the "Appellate Division") affirmed the guilty
determination as to certain of the charges but annulled the
determination as to other charges, and remitted the matter to the
Department of Corrections and Community Supervision ("DOCCS") for
redetermination of the penalty.  In accordance with the Appellate
Division's order, DOCCS redetermined petitioner's penalty, and

imposed three months of confinement in the SHU; four months and 26 days loss of packages, commissary, and telephone privileges; two months loss of good time; and six months loss of visitation.

In the instant petition, petitioner alleges various due process violations in connection with the disciplinary hearing underlying the aforementioned punishment. In particular, he alleges that DOCCS failed to expunge and improperly relied on a misbehavior report from January 2013, did not timely commence the disciplinary hearings, failed to authenticate fellow inmate Gregory Williams' refusal to testify, refused to permit him to call certain witnesses, refused to disclose certain phone records, and violated New York State regulations by delaying in issuing the misbehavior report. Petitioner also alleges that the evidence at the hearing did not support the charges and that DOCCS' disciplinary determination was barred by the doctrine of *res judicata*. For the reasons discussed at length below, the Court determines that petitioner is not entitled to relief and therefore denies the petition.

## II.  Factual Background and Procedural History

Petitioner is currently serving an aggregate term of 20 years in prison, having been convicted of three counts of robbery in the first degree and sentenced as a second felony offender. On January 30, 2013, while he was incarcerated at the Attica Correctional Facility ("Attica"), petitioner was served with a

misbehavior reported dated January 29, 2013, in which it was alleged that petitioner had violated rules of inmate behavior governing drugs, smuggling, third-party phone calls, exchanging personal identification numbers ("PINs"), and visitation. DOCCS Investigator J. Spengler, the report's author, stated that an ongoing investigation had revealed that petitioner was misusing the inmate phone system, including by making three-way calls and exchanging PINS, to conspire with four individuals (Dejah Burnette, Jamel Ragster, Barbara Ward, and Precious Bailey) to purchase, obtain, provide, package, and smuggle drugs into Attica. Investigator Spengler further reported that the investigation had been conducted by DOCCS' Inspector General's Office and that the allegations against petitioner were supported by confidential information.

On January 30, 2013, DOCCS Captain Coveny, the hearing officer, commenced a Tier III disciplinary hearing related to the misbehavior report. Captain Coveny subsequently adjourned the hearing, to permit petitioner time to prepare a defense. Additional extensions of time were granted on February 5th, 6th, and 9th.

The hearing reconvened on February 12, 2013, at which time the hearing officer advised petitioner of his rights and obligations and read the misbehavior report into the record. Petitioner pled not guilty to the charges against him.

Captain Coveny informed petitioner that the investigation into his activities had commenced on December 11, 2012, and was finalized on January 28, 2013. Petitioner testified that none of his visitors had been found with contraband and that he believed the matter had been resolved by an earlier order barring visits for petitioner. Investigator Spengler provided both confidential and non-confidential testimony. She stated that, during the course of her investigation, she had reviewed confidential documentation establishing that petitioner had used inmate Charles Cherry's PIN to place telephone calls. Investigator Spengler further testified that she had monitored petitioner's phone calls and discovered that he was conspiring to smuggle drugs into Attica. Petitioner asked Investigator Spengler whether she had personally seen any contraband introduced into the facility. Captain Coveny interrupted Investigator Spengler's answer to this question, to which petitioner objected. Captain Coveny explained that he believed Investigator Spengler was referring to an early, expunged misbehavior report, and that he was trying to protect petitioner's rights.

Petitioner requested that the charges be dismissed based on Investigator Spengler's reference to the expunged misbehavior report. Captain Coveny informed petitioner that the expunged misbehavior report was not part of the record and that his determination would be based only on the record before him.

Petitioner requested that Inmate Gregory Williams testify on his behalf. However, Mr. Williams had signed a refusal form indicating that he did not want to be involved in the hearing. Petitioner told the hearing officer that Mr. Williams had verbally agreed to testify, and the hearing officer agreed to speak with Mr. Williams. The record shows that Mr. Williams did not testify at petitioner's hearing. Mr. Cherry did testify, and denied giving his PIN to petitioner.

Petitioner also requested permission to call the four individuals mentioned in the misbehavior report as his alleged co-conspirators. The hearing officer determined that it would be unnecessarily duplicative to allow petitioner to call all of these individuals, but stated that he would allow petitioner to call one of them. Petitioner initially elected to call his mother, but after further consideration he ultimately withdrew his request to have any of these individuals testify.

Petitioner requested a copy of Mr. Cherry's phone log. The hearing officer told petitioner he would review the phone log and determine whether it was confidential. He further explained that if he determined that the phone log was not confidential (and thus disclosable), he would provide petitioner with a copy when the hearing reconvened the following day. The hearing officer ultimately did not provide petitioner with a copy of Mr. Cherry's

phone log, finding that doing so would endanger the security of the facility.

On February 13, 2013, Captain Coveny issued a disposition finding petitioner guilty of having violated the rules related to drugs, smuggling, third-party phone calls, exchanging PINs, and visitation. He imposed a penalty of six months confinement in the SHU, six months loss of packages, telephone, and commissary privileges, six months loss of visitation, and three months loss of good time. On administrative review, the determination was affirmed, but the penalty was discretionarily changed to four months and 26 days confinement in the SHU, four months and 26 days loss of packages, telephone, and commissary privileges, six months loss of visitation, and three months loss of good time.

Petitioner challenged the determination in an Article 78 proceeding originally commenced in New York State Supreme Court, Franklin County, and subsequently transferred to the Appellate Division. On July 24, 2014, the Appellate Division entered a Memorandum and Judgement affirming the guilty disposition as to the charges of making third-party phone calls and exchanging PINs, but annulling it as to the other charges. The Appellate Division directed DOCCS to expunge all references to the annulled charges in petitioner's institutional file and to redetermine the appropriate penalty for the remaining charges. Petitioner sought leave to

appeal to the New York Court of Appeals, which was denied on October 28, 2014.

On August 1, 2014, DOCCS reviewed the matter and imposed a penalty of three months confinement in the SHU, four months and 26 days loss of packages, telephone, and commissary privileges, two months loss of good time, and six months loss of visitation. The penalty was affirmed on administrative appeal.

Petitioner filed the instant petition on August 31, 2015. As set forth above, he makes various allegations regarding the propriety of DOCCS' handling of the misbehavior report and conduct of the disciplinary hearing. Specifically, he contends that his rights to due process were violated because DOCCS failed to expunge and improperly relied on a misbehavior report from January 2013, did not timely commence the disciplinary hearings, failed to authenticate Mr. Williams' refusal to testify, refused to permit him to call his alleged co-conspirators as witnesses, refused to disclose Mr. Cherry's phone log, and violated New York State regulations in issuing the misbehavior report. Petitioner further claims that the evidence at the hearing did not support the charges and that DOCCS' disciplinary determination was barred by the doctrine of *res judicata*. For the following reasons, the Court determines that petitioner is not entitled to habeas relief.

## III. Discussion

### A.    Cognizability of Petitioner's Claims

Title 28, Section 2254 "is explicit that a federal court is to entertain an application for a writ of habeas corpus 'only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wainwright v. Goode*, 464 U.S. 78, 83-84 (1983) (quoting 28 U.S.C. § 2254(a)), *reh'g denied*, 423 U.S. 1092 (1984).  Challenges to the validity of prison administrative actions that affect the fact or length of the prisoner's confinement are properly brought under 28 U.S.C. § 2254. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus"); *see also Poventud v. City of N.Y.*, 750 F.3d 121, 128 (2d Cir. 2014) (noting that *Preiser* "declined to recognize a distinction where the [prisoner's] challenge [to his imprisonment] was to a final administrative decision") (citing *Preiser*, 411 U.S. at 489).

However, as the Second Circuit has observed, "many intra-prison administrative or disciplinary decisions that could result in deprivations in violation of the Constitution do not affect the fact or length of a prisoner's confinement[,]" *Jenkins*

-8-

*v. Haubert*, 179 F.3d 19, 23 (2d Cir. 1999). These include "placement in solitary confinement or keeplock, . . . or some other form of confinement more restrictive than that imposed on the general prison population." *Id.* Because such disciplinary decisions do not affect the fact or length of a prisoner's confinement, they are not cognizable under § 2254.

The Second Circuit did acknowledge in *Jenkins* that *Preiser* "left open the question of whether federal habeas corpus is available to prisoners who challenge decisions imposing restrictive conditions of confinement." *Jenkins*, 179 F.3d at 23 (citing *Preiser*, 411 U.S. at 499 ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal.")). Although this dictum has engendered much discussion in the circuit courts, *see id.* (citing cases), the law governing a *habeas* petitioner's claims is limited to the holdings, not dicta, of the Supreme Court. *See Tueros v. Greiner*, 343 F.3d 587, 593-94 (2d Cir. 2003) (dicta in Supreme Court decision was not clearly established federal law that could form basis for habeas relief under Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d)(1)) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

Here, the punishment imposed on petitioner following the adverse disciplinary hearing was three months of confinement in the

SHU; four months and 26 days loss of packages, commissary, and telephone privileges; two months loss of good time; and six months loss of visitation. The loss of good time credits may impact the fact or overall length of petitioner's confinement, and, to the extent he seeks to restore those good-time credits, his claim is cognizable under § 2254. However, to the extent that petitioner's claims are based on his confinement to the SHU or his loss of various privileges, challenges to the imposition of those punishments are not cognizable as a habeas claim. *See, e.g., Green v. Bradt*, 2012 WL 130274 (W.D.N.Y. Jan. 17, 2012) (dismissing as not cognizable habeas claims regarding prison disciplinary hearing that resulted in keeplock confinement because punishment did not affect the overall length of petitioner's confinement); *see also Welch v. Mukasey*, 589 F. Supp.2d 178, 183 n.3 (N.D.N.Y. 2008) (SHU confinement); *Green v. Duncan*, 2007 WL 781927, at *2-3 (N.D.N.Y. Mar. 13, 2007) (keeplock and loss of privileges); *H'Shaka v. Conway*, 2006 WL 1418601, at *2 (S.D.N.Y. May 22, 2006) (SHU confinement). Accordingly, petitioner's challenges to the imposition of any punishment other than the loss of good-time credits are denied.

**B.   Analysis of Petitioner's Claims**

**1.   Standard of Review**

"Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d)(1), a federal court may not grant

a state prisoner's habeas application unless the relevant state-court decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) (internal quotation omitted). "The question is 'not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so.'" *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 367 (E.D.N.Y. 2013) (quoting *Ryan v. Miller*, 303 F.3d 231, 245 (2d Cir. 2002)). "The petition may be granted only if 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

### 2. *Res Judicata*

As a threshold issue, petitioner contends that the challenged prison disciplinary hearing was barred by the doctrine of *res judicata*. In particular, he argues that the dismissal of a prior misbehavior report charging him with drug possession barred the proceedings that ultimately resulted in the loss of his good-time credits.

Petitioner's claim based on the doctrine of *res judicata* "fails to raise an issue of federal law, which is an essential prerequisite to habeas relief." *U.S. ex rel. Roche v. Scully*, 739

F.2d 739, 741 (2d Cir. 1984).  Petitioner's papers are clear that his *res judicata* argument is based on New York law.  *See, e.g.,* Docket No. 11 at 6 (contending that "subsequent litigation of [the] alleged incident should be barred under New York law") (emphasis added).  Claims based on state law are "not cognizable on federal habeas review."  *Saracina v. Artus*, 452 F. App'x 44, 46 (2d Cir. 2011).

Petitioner's factual claims could perhaps be read as making an argument based on the Fifth Amendment's prohibition against double jeopardy.  The Court notes, however, that petitioner expressly denies that he is making a double jeopardy argument.  *See* Docket No. 11 at 6 ("res judicat[a] is the argument, not double jeopardy").  Moreover, even considering the claim on the merits, petitioner has not shown that he was improperly subjected to double jeopardy.

The Fifth Amendment provides that "[n]o person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb."  The double jeopardy clause "protects individuals from three types of violations: (1) a second prosecution after acquittal for the same offense, (2) a second prosecution after conviction for the same offense, and (3) multiple punishments for the same offense." *Porter v. Coughlin*, 421 F.3d 141, 144 (2d Cir. 2005).  It is well-established that "the double jeopardy clause . . . is inapplicable to prison disciplinary proceedings."  *LeBron v. Artus*, 2008 WL 111194, at *6 (W.D.N.Y. Jan. 9, 2008).  As such, petitioner cannot maintain his claim on the basis of the double jeopardy clause.

### 3.   Due Process

Turning to petitioner's due process claims, it is important to note as a general matter that a prison inmate facing a disciplinary proceeding is not entitled to ""the full panoply of rights" afforded to the defendant in a criminal prosecution." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Instead, in a disciplinary hearing, "[i]nmates are entitled to advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004).  On review, the Court must consider whether there was "reliable evidence" of the inmate's guilt.  *Id.*

### a.   Reliance on Dismissed Misbehavior Report

Petitioner argues that his right to due process was violated because the hearing officer relied on the allegations set forth in a dismissed misbehavior report in disposing of the charges against petitioner.  Petitioner has failed to point to any evidence in the record supporting this argument.  To the contrary, the hearing officer expressly informed petitioner that the dismissed misbehavior report was not a part of the record and that it would not be considered in reaching his determination.  This Court is not required to credit allegations by petitioner that "are contradicted by the record in the underlying proceeding." *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009).

Moreover, petitioner has pointed to no Supreme Court precedent establishing that it is a due process violation for a hearing officer to reference a dismissed misbehavior report. Nor can the Court conclude that the Appellate Division's denial of petitioner's claim was an unreasonable application of established law regarding due process. The Supreme Court has made it clear that "[habeas] relief is available under . . . [the] unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question." *White v. Woodall*, 134 S. Ct. 1697, 1706–07 (2014) (internal quotation omitted). Petitioner's argument fails far short of this standard, and he is therefore not entitled to relief.

### b.    Untimely Commencement of Proceeding

Petitioner also contends that his prison disciplinary hearing was untimely under 7 N.Y.C.R.R. § 251-5.1. To the extent petitioner's claim is based on the alleged violation of New York's regulatory scheme, it is not cognizable on federal habeas review. *See Saracina,* 452 F. App'x at 46.

Petitioner also has not established that he is otherwise entitled to habeas relief on this claim. As a threshold issue, petitioner failed to argue in his Article 78 petition that the allegedly untimely commencement of the disciplinary hearing violated his right to due process. It is well-established that a state inmate who seeks federal habeas review must first exhaust his available state court remedies. 28 U.S.C. § 2254(b)(1). This is

so because "interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005). "In order to satisfy the exhaustion requirement, a habeas petitioner must give the state courts a fair opportunity to review the federal claim and correct any alleged error." *Ortiz v. Heath*, 2011 WL 1331509, at *6 (E.D.N.Y. Apr. 6, 2011).

A claim may be deemed exhausted where further review is procedurally barred under state law. *See id.* ("[B]ecause the exhaustion requirement 'refers only to remedies still available at the time of the federal petition, it is [also deemed] satisfied if it is clear that the habeas petitioner's claims are now procedurally barred under state law.'") (quoting *Coleman v. Netherland*, 518 U.S. 152, 161 (1996)). However, "[w]here a procedural bar gives rise to exhaustion . . . it also 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim.'" *Id*. (quoting *Netherland*, 518 U.S. at 162). "For a procedurally defaulted claim to escape this fate, the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice, (*i.e.*, the petitioner is actually innocent)*." Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001).

Here, petitioner did not raise this claim before the state court, and his time for doing so has expired. *See Abreu v. Lempke*, 2013 WL 3475304, at *10 (N.D.N.Y. July 10, 2013) (noting New York

statute of limitations related to Article 78 proceedings). Accordingly, his claim based on the allegedly untimely commencement of his proceeding is barred from federal habeas review unless he can demonstrate both cause and prejudice, or actual innocence. Petitioner cannot meet this high bar. First, his claim is meritless, and there is therefore no prejudice. "[D]ue process for an inmate disciplinary hearing does not encompass a right to a speedy hearing." *Barnes v. Henderson*, 628 F. Supp. 2d 407, 411 (W.D.N.Y. 2009). Second, there is no support in the record for the conclusion that petitioner is actually innocent of the charges against him, such that there is a danger of a fundamental miscarriage of justice. Accordingly, petitioner's claim based on the allegedly untimely commencement of his disciplinary hearing does not entitle him to habeas relief.

### c. Mr. Williams' Refusal to Testify

Petitioner's next argument is that he was denied due process because the hearing officer did not verify that Mr. Williams in fact did not want to testify. Petitioner has failed to establish that the Appellate Division's rejection of this argument was either contrary to or an unreasonable application of established federal law. To the contrary, courts in this Circuit have previously concluded that "[a] hearing officer does not have to conduct an independent investigation before accepting an inmate-witness's refusal to testify." *Johnson v. Doling*, 2007 WL 3046701, at *7 (N.D.N.Y. Oct. 17, 2007). Accordingly, the Court finds that petitioner's claim based on the hearing officer's alleged failure

to investigate Mr. Williams' signing of the refusal form is
meritless.

### d.    Refusal to Call Witnesses

Petitioner argues that he was denied due process because the
hearing officer refused to call his four alleged co-conspirators as
witnesses.  Again, petitioner has not shown that the Appellate
Division's rejection of this argument was contrary to or an
unreasonable application of established federal law.

"The Supreme Court has stated that disciplinary hearing
officers must have the discretion to deny witnesses, noting that
valid bases for the denial of witnesses would include irrelevance,
lack of necessity, and other hazards particular to each case."
*Phelan v. Superintendent of the Great Meadow Corr. Facility*, 2012
WL 1190169, at *6 (W.D.N.Y. Apr. 9, 2012).  Here, the hearing
officer reasonable concluded that it would be unnecessary and
redundant for petitioner to call all four of his alleged co-
conspirators as witnesses, but agreed to let petitioner call one of
them.  Petitioner ultimately declined to do so and withdrew his
request to call any of the four.  Under these circumstances, the
Court cannot conclude that any due process violation occurred. *See,
e.g., Russell v. Selsky*, 35 F.3d 55, 58 (2d Cir. 1994) (no due
process violation where hearing officer excluded witnesses on the
basis that their testimony would be duplicative or non-probative).

### e.    Failure to Disclose Phone Records

Petitioner's next contention is that he was denied due process
because the hearing officer did not disclose Mr. Cherry's phone

logs to him.  Again, the Court concludes that the Appellate Division's rejection of this claim comported with established federal law.

 "Courts have long recognized . . . that the right to know evidence supporting prison disciplinary rulings is not absolute. As the Supreme Court has observed, prison disciplinary proceedings take place in tightly controlled environments peopled by those who have been unable to conduct themselves properly in a free society. The risks of violence or intimidation directed at either other inmates or staff are real. Thus, when the disclosure of evidence presents such risks, hearing officers may properly decline to inform an inmate of the adverse evidence." *Sira v. Morton*, 380 F.3d 57, 74-75 (2d Cir. 2004) (internal citations and quotations omitted).  When an inmate is denied evidence on the basis of safety concerns, all that is required is that the hearing officer provide a reasonable justification for his or her actions. *Id*.

Here, the hearing officer examined the phone log, which had been marked "confidential" by the investigators, and found on the record that disclosing its contents to petitioner would jeopardize the safety and security of the facility.  The hearing officer's actions complied with established federal law, and petitioner has not shown that his right to due process was violated.

### f.   Delay in Issuing Report

Petitioner argues that he was denied due process because there was allegedly an unexplained delay in issuance of the misbehavior report.  This claim is factually belied by the record.

Investigator Spengler testified that her investigation was finalized on January 28, 2013, and the misbehavior report was completed on January 29, 2013. Moreover, petitioner's claim fails as a matter of law.

First, to the extent petitioner's claim is based on the alleged violation of New York law, as discussed above, it is not cognizable on federal habeas review. Second, to the extent petitioner is alleging he was denied due process, petitioner did not raise this argument before the Appellate Division, and it is therefore procedurally barred. Petitioner cannot show any prejudice related to this claim because, as previously noted, the record in this case shows that the misbehavior report was completed one day after Investigator Spengler's investigation was finalized. Petitioner also has offered no evidence from which the Court could conclude there was any danger of a fundamental miscarriage of justice. Accordingly, petitioner has failed to show that he is entitled to habeas relief as to this claim.

### g. Sufficiency of the Evidence

Petitioner's final claim is that there was insufficient evidence to support the charges against him. Because the only two charges on which petitioner was ultimately determined to be guilty were that he violated the rules governing third-party phone calls and exchanging PINs, the Court limits its consideration to these two issues.

The Supreme Court has explained that "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead,

due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing."

*Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 457 (1985). Thus, even if the evidence is "meager" or indirect, federal due process requirements are satisfied so long as "the record is not so devoid of evidence that the findings . . . were without support or otherwise arbitrary." *Id.*

Here, the evidence presented at the hearing was plainly sufficient to support the charges against plaintiff. In particular, the misbehavior report and Investigator Spengler's testimony both tended to show that the charges against plaintiff were substantiated. Courts in this Circuit have held that misbehavior reports based on personal knowledge are enough, standing alone, to establish guilt. *See, e.g., Simon v. Selsky*, 2002 WL 1205737, at *4 (S.D.N.Y. Mar. 12, 2002). Here, the misbehavior report was corroborated by Investigator Spengler's testimony. Accordingly, there is no merit to petitioner's claim that the evidence against him was insufficient.

## IV. Conclusion

For the foregoing reasons, Petitioner's application for a writ of habeas corpus is denied, and the petition is dismissed. Because Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. The Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3) and FED. R. APP. P.

24(a)(3), that any appeal from this Decision and Order would not be taken in good faith, and therefore leave to appeal *in forma pauperis* is denied. *See Coppedge v. United States*, 369 U.S. 438, 445-46 (1962). The Clerk of the Court is instructed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**


                              s/Michael A. Telesca

                    _____
                              HONORABLE MICHAEL A. TELESCA
                              United States District Judge


DATED:      Rochester, New York
            November 8, 2017